IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| DIVERSIFIED MARINE, INC., ) | |
|               Plaintiff, ) | Civil No. 10-664-JE |
|      v. ) | OPINION AND ORDER |
| JT MARINE, INC., a Washington corporation, and WAINO TORISTOJA, an individual, ) ) ) | |
|               Defendants. ) | |

        Todd A. Hanchett
        Karen O'Connor
        Amy L. Angel
        Barran Liebman LLP
        601 S.W. Second Avenue, Suite 2300
        Portland, OR 97204-3159

              Attorneys for Plaintiff

        William E. Gaar
        Michelle E. Lentzner
        Buckley LeChevallier P.C.
        Three Centerpointe Drive, Suite 250
        Lake Oswego, OR 97035-8617

              Attorneys for Defendant

1 - OPINION AND ORDER

JELDERKS, Magistrate Judge:

Plaintiff Diversified Marine, Inc. (DMI) brings this commercial litigation against defendant JT Marine, Inc. (JT) and Waino Toristoja. Defendants move to dismiss some of plaintiff Diversified's claims. For the reasons set out below, the motion is denied.

### Plaintiff's Allegations

The following allegations are accepted as true for the purposes of evaluating the pending motion to dismiss.

Plaintiff DMI, an Oregon corporation, is in the business of constructing, refitting, and repairing tugs and barges. It also provides marine towing and tug, barge, and crane support for environmental companies, and provides marine transportation and towing services and salvage services, including the charter and rental of marine equipment.

Plaintiff DMI employed defendant Waino Toristoja as an equipment maintenance manager and tug captain from February, 1995, until February 28, 2010. During this time, Waino Toristoja had full access to plaintiff's customer and contacts lists, pricing information, and other confidential information.

From July, 1996, until June, 2004, Dano Toristoja, Waino Toristoja's brother, worked for plaintiff DMI as a welder. From February, 1997, until July, 2001, Timo Toristoja, who is also Waino Toristoja's brother, worked for plaintiff DMI as a welder.

In June, 2004, Dano Toristoja began working for Shaver Transportation, one of DMI's customers. In July, 2001, Timo Toristoja started Hi Tech Metal Fabrication. He later started defendant JT Marine. Both Hi Tech Metal Fabrication and JT Marine compete directly with DMI.

Though JT Marine competes directly with plaintiff DMI in a number of areas, until Waino Toristoja started working for it in 2010, it lacked expertise in certain areas, including tug and crane operation.

Plaintiff DMI agreed to perform significant services for Certified Coatings Co. (CCC), one of its longtime customers, on a bridge painting project in Longview, Washington. The project obligated DMI to load, refit, and transport a barge and related mooring equipment to Longview, to moor the barge during the winter, and to then place the barge at the Longview bridge until the project was completed. DMI was paid $405,000 for work performed on the first phase of the project, and was to receive an additional $225,000 for work scheduled to begin on April 1, 2010.

While he worked for DMI, defendant Waino Toristoja worked with CCC on the bridge project, and was responsible for seeing the project through to completion. In his position with DMI, Waino Toristoja had access to DMI's confidential and proprietary information about the project pricing, margins, and specifications.

Shortly after he resigned his position as an equipment maintenance manager and tug captain with plaintiff, defendant Waino Toristoja began working for defendant JT Marine in a similar capacity. Based upon its suspicion that Waino Toristoja had been in contact with JT Marine while working for it, plaintiff DMI hired a computer forensics specialist to examine his work computer at DMI shortly after he left the company. The specialist found that, though Waino Toristoja had attempted to delete his computer's hard drive, evidence showed that DMI's contact list, contracts on which Waino Toristoja had worked, proprietary pricing information, and other confidential and proprietary company information had been downloaded to at least three external data-storage devices. Plaintiff DMI did not authorize this removal of information.

On information and belief, plaintiff DMI alleges that, while he was still working for DMI, Waino Toristoja provided information to defendant JT Marine regarding several of DMI's business opportunities, which JT subsequently sought to obtain. After defendant Waino Toristoja stopped working for plaintiff DMI, some of DMI's long-term vendors were contacted with the intention that JT obtain the same pricing and consideration that DMI had earned through its long-term business relationships.

3 - OPINION AND ORDER

After he stopped working for DMI, Waino Toristoja told CCC that DMI was not qualified to perform the remaining work that DMI had arranged to perform for it, but that he and JT Marine could perform all the remaining work on the project.

### Plaintiff's Claims

Plaintiff asserts four claims.  In its first claim, DMI alleges that Waino Toristoja breached his fiduciary duty to DMI.  This claim alleges that, while he was still employed by DMI, Waino Toristoja failed to use his best efforts on DMI's behalf, made misrepresentations that misled DMI as to the activities he was engaging in on behalf of other parties, concealed prohibited business activities, used plaintiff's equipment and resources in furtherance of activities with third parties that were not related to plaintiff's business and contrary to plaintiff's interests, used plaintiff's trade secrets and confidential information to benefit defendant JT Marine and third parties and to the detriment of plaintiff, and referred work to JT Marine.  Plaintiff seeks to recover $165,000 on this claim.

Plaintiff's second claim, captioned "Interference With Present and Future Economic Relations," alleges that defendants intentionally interfered with plaintiff's economic relations with its clients.  Plaintiff seeks to recover $165,000 on this claim.

Plaintiff's third claim, which is brought against both defendants, is captioned "Interference With Contract or Business Expectancy."  This claim alleges that Waino Toristoja interfered with DMI's agreements with its clients by soliciting the clients to leave plaintiff and do business instead with defendant JT Marine.  Plaintiff alleges that the interference was carried out through improper means, because defendant used confidential information obtained by Waino Toristoja and disclosed to JT Marine.  Plaintiff seeks recovery of $165,000 on this claim.

Plaintiff's fourth claim alleges that defendants engaged in unfair competition in violation of the Uniform Trade Secrets Act, Or. Rev. Stat. § 646.461 et. seq.  Plaintiff alleges it is entitled to an award of exemplary damages because defendants wilfully and maliciously

misappropriated its trade secrets. It also asserts a claim for attorney fees and costs pursuant to this claim, and seeks "an order enjoining Waino Toristoja's conduct."

### Pending Motion

Defendants move to dismiss portions of plaintiff's first claim, and all of plaintiff's second and third claims, on the grounds that these claims are preempted by plaintiff's fourth claim, which alleges violation of the Uniform Trade Secrets Act. Defendants also seek dismissal of plaintiff's second claim for failure to state a claim upon which relief may be granted.

### Standards for evaluating motions to dismiss for failure to state a claim

In evaluating a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the allegations of material fact as true, and must construe those allegations in the light most favorable to the non-moving party. <u>Parks Sch. of Bus. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995). A claim should be dismissed only if it appears beyond doubt that the plaintiff can establish no set of facts under which relief could be granted. <u>Jacobsen v. Hughes Aircraft Co.</u>, 105 F.3d 1288, 1292 (9th Cir. 1997) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

### Discussion

Defendants contend that portions of plaintiff's first claim, and all of plaintiff's second and third claims, are preempted by Or. Rev. Stat. § 646.473(1), and that plaintiff's second claim also fails to state a claim upon which relief may be granted. I will address the latter of these contentions first.

1. <u>Sufficiency of plaintiff's claim for interference with economic relations</u>

The parties agree that, in order to state a claim for intentional interference with economic relations, a plaintiff must plead: 1) the existence of a present or prospective

5 - OPINION AND ORDER

business or professional relationship; 2) a third party's intentional interference with that relationship; 3) which is accomplished through improper means or for an improper purpose; 4) a causal relationship between the interference and the damage to the relationship, and 5) resulting damages.  McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841 (1995).

Defendants contend that plaintiff has not stated an intentional interference claim because it has not pleaded that the interference alleged here was accomplished through improper means or for an improper purpose.  They assert that plaintiff has merely alleged that "the parties competed with another," and cite legal authority for the proposition that mere competition is not improper.

A careful reading of plaintiff's complaint does not support this assertion.  Plaintiff's intentional interference claim, which incorporates earlier paragraphs of the complaint, alleges more than defendants' simple attempt to do business with its clients; it alleges that it had existing economic relationships with its clients with which defendants intentionally interfered through misappropriation of confidential information, the breach of fiduciary duty, and fraudulent misrepresentation.  These allegations assert that defendants employed wrongful means to interfere with plaintiff's economic relationships with its clients.  This is sufficient to state a claim for interference with economic relations.

2. Preemption under § 646.473(1)

Oregon Revised Statute Section 646.473(1) provides, in relevant part, that

> Except as provided in subsection (2) of this section, ORS 646.461 to 646.475 supersede conflicting tort, restitution or other law of Oregon providing civil remedies for misappropriation of a trade secret.

Defendants correctly note that the second claim, third claim, and portions of the first claim allege that defendants improperly used plaintiff's trade secrets.  They argue that, because these claims "all rest on a misappropriation of trade secrets," they are preempted by the fourth claim, which is based upon the Uniform Trade Secrets Act.  Defendants contend that claims two and three and the part of claim one that is based upon misappropriation of

6 - OPINION AND ORDER

trade secrets are barred because the Uniform Trade Secrets Act expressly "supercede[s] conflicting tort" law.

Defendants cite Acrymed, Inc. v. Convatec, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004),  in support of their contention that the claims in question are preempted by the Uniform Trade Secrets Act.  The Acrymed court observed that Oregon courts had not addressed "the extent to which the Act preempts civil remedies," and noted that a number of courts in other states had "extended the preemptive effect of the same language to claims that are based on the same operative facts as a claim for trade secret misappropriation under the Act." Id.  The Acrymed court concluded that "[w]here the essence of the claim relates primarily to the alleged misappropriation of a trade secret, the claim is displaced by the preemptive language of the Act." Id. (Citing Hutchison v. KFC Corp., 809 F. Supp. 68, 72 (1992)).

Acrymed notwithstanding, I conclude that defendants' motion to dismiss based upon preemption should be denied.  By its own terms, § 646.473(1) preempts only those tort claims that actually conflict with the Uniform Trade Secrets Act.  Though defendants rely on § 646.473(1), paragraph (2) of that section applies as well.  It provides that the Uniform Trade Secrets Act "shall not affect *** (b) Other civil remedies that are not based upon misappropriation of a trade secret. . . ."

In other decisions in this court, plaintiffs have been allowed to proceed both with claims under the Uniform Trade Secrets Act and tortious interference claims in which alleged misappropriation of trade secrets have played a part.  In Vigilante.Com, Inc. v. Argus Test.Com, Inc., CV 04-413-MO, 2005 WL 2218405 at * 14 (D. Or. Sept. 6, 2005), the court concluded that

> Simply put, OUTSA does not require the elements at the heart of a tortious interference claim–namely, intentional interference with a business relationship.  While the alleged misappropriation of [plaintiff's] software and database overlaps with an OUTSA claim, [the interference] claim is not superseded by OUTSA as a 'conflicting tort.'

7 - OPINION AND ORDER

In Stockamp & Assoc., Inc. v. Accretive Health, CV 04-1443-BR, 2005 WL 1864298 at *2, the court observed that

> A claim for intentional interference with economic relations provides a remedy for interference with an economic relationship rather than a civil remedy for misappropriation of trade secrets. No Oregon court has held an intentional interference claim is preempted by the [Oregon Uniform Trade Practices Act] merely because the defendant's alleged improper motive was to misappropriate trade secrets. Thus . . . the essential element of the tort is the defendant's improper motivation rather than the actual misappropriation.

The reasoning of these decisions is persuasive, and I conclude that the allegations of misappropriation set out in or incorporated into plaintiff's interference claims in the present action do not necessarily create the kind of "conflicting" torts that are preempted under the Uniform Trade Secrets Act.

Plaintiff also contends that the portion of its claim for breach of fiduciary duty that is based upon Waino Toristoja's alleged improper transfer of "confidential" information to defendant is not preempted, because information can be "confidential" without constituting a "trade secret" within the meaning of the Uniform Trade Secrets Act. I agree. See Beard Research, Inc. v. Kates, No. 1315-VCP, 2010 WL 1644177 at * 18 (Del. Ch. Apr. 23, 2010) (no preemption where plaintiff could establish claim for breach of fiduciary duty based upon transfer of confidential information not qualifying as "trade secret" within meaning of Trade Secrets Act).

## Conclusion

Defendants' motion to dismiss (# 7) is DENIED.

DATED this 10th day of August, 2010.

      /s/ John Jelderks
      John Jelderks
      U.S. Magistrate Judge